IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 4:22-cr-00176-SMR-HCA-1 |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON MOTION TO DISMISS |
| v. | ) | |
| | ) | |
| DONTAVIUS RASHAUN SHARKEY, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Dontavius Rashaun Sharkey was indicted by a grand jury on a variety of firearm charges. He moves to dismiss the charges alleging they are facially unconstitutional and unconstitutional as applied to him under the Second Amendment to the United States Constitution as interpreted by the United States Supreme Court in *New York State Rifle & Pistol Association, Inc., v. Bruen*, 142 S. Ct. 2111 (2022). [ECF No. 68].[1]

I.   BACKGROUND

On June 13, 2023, a superseding indictment was filed against Sharkey alleging eight counts. Counts 1, 3, and 6 charge him with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). He is charged with Straw Purchasing Conspiracy in Counts 2, 4, and 5 prohibited by 18 U.S.C. § 932(b)(1). Count 7 alleges Defendant possessed an illegal machine gun and Count 8 charges possession of a firearm with an obliterated serial number in contravention of 18 U.S.C. § 922(k). He argues all charges but Count 7 violate his rights protected by the Second Amendment.

---

[1] Defendant had filed a previous Motion to Dismiss the Indictment on April 25, 2023. Given the superseding indictment and his subsequent Motion to Dismiss, that is MOOT. [ECF No. 40].

1

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court found that a District of Columbia law that "generally prohibit[ed] the possession of handguns" violated the Second Amendment. 554 U.S. 570, 574–75 (2008). The *Heller* Court determined that the Second Amendment protects an individual's right to keep and bear arms for the purpose of self-defense and the "city's total ban on handguns" contravened that constitutional provision. *Id*. at 576. Two years later, the Supreme Court incorporated the Second Amendment against the states. *See McDonald v. City of Chicago*, 561 U.S. 742 (2010). Under *Heller* and *McDonald*, "law-abiding, responsible citizens" are permitted to possess a firearm "in defense of hearth and home." *Heller*, 554 U.S. at 635.

Two terms ago, the Court extended the Second Amendment's protections to possessing firearms outside of the home for "ordinary self-defense needs." *Bruen*, 142 S. Ct. at 2156. In the process of invalidating the New York licensing regime at issue in *Bruen*, the Court rejected the two-step framework that lower courts had used since *Heller* and *McDonald* to analyze Second Amendment challenges. *Id.* at 2125. In place of the two-step framework, which used the familiar tiers of scrutiny for constitutional challenges, the Court substituted "a test rooted in the Second Amendment's text, as informed by history" which requires the Government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127. Under this test, "when the Second Amendment's plain text covers an individual's conduct," such conduct is presumptively protected. *Id*. at 2126.

## II. DISCUSSION

### A. Felon in Possession and Straw Purchasing Constitutionality

Since *Bruen*, the United States Court of Appeals for the Eighth Circuit has held that § 922(g)(1) does not violate the Second Amendment. *United States v. Jackson*, 69 F.4th 495, 501 (8th Cir. 2023). In *Jackson*, the panel concluded that the felon in possession statute was not unconstitutional as-applied to the defendant. *Id*. Furthermore, it concluded that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1) because the Supreme Court has emphasized that their decisions in *Heller* and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. (quoting *Heller*, 554 U.S. at 626).

Defendant acknowledges that *Jackson* "is obviously binding precedent on this Court" but nonetheless exhorts that the decision "is wrong." [ECF No. 68 at 18]. The full Circuit recently denied a petition for rehearing and rehearing *en banc* by the defendant in *Jackson*. *See United States v. Jackson*, No: 22-2870, 2023 WL 5605618 (8th Cir. Aug. 30, 2023). Accordingly, the Court is bound by Circuit precedent on the constitutionality of § 922(g)(1). The Motion to Dismiss the indictment as to Counts 1–6 is DENIED.[2]

### B. Possession of a Firearm with an Obliterated Serial Number Constitutionality

Count 8 of the superseding indictment alleges that Defendant possessed a firearm that had a manufacturer's serial number that was removed, altered, and obliterated in violation of 18 U.S.C. § 922(k). [ECF No. 53] (sealed). He asserts that § 922(k) is facially unconstitutional because it is

---

[2] Counts 2, 4, and 5 for Straw Purchasing Conspiracy allege that Defendant conspired with others to purchase firearms for him. These charges are predicated on Defendant being an unlawful possessor of a firearm. [ECF No. 68 at 22]. Because § 922(g)(1) is constitutional, the motion is DENIED as to these charges as well.

protected by the plain text of the Second Amendment and the Government cannot show a historical tradition of categorically regulating possession of firearms with obliterated serial numbers.

The Government rejects Defendant's claim about § 922(k), arguing that the statute aligns with historical precedents, including colonial laws and state legislation, which sought to regulate firearms and gunpowder. It argues that these historical examples reflect a broader framework of firearm trade regulation, demonstrating that early American legislatures were engaged in regulating private firearm transactions. The Government identifies several laws which it says support this position.

For instance, in colonial times, Connecticut imposed a ban on the sale of firearms beyond the colony's borders, highlighting an early effort to control the flow of firearms. *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017) (en banc). Additionally, Native Americans were prohibited from purchasing firearms in at least six colonies. *Id*. at 685. Acknowledging that these historical regulations were not identical to § 922(k), the Government contends that their characteristics indicate a historical tradition of regulating private firearm transactions in early America.

Furthermore, various states enacted laws concerning the inspection and marking of gunpowder. Pennsylvania, for example, passed a regulation requiring gunpowder stored in public magazines to undergo proof and marking. 3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred 240–44 (1810). Importation, transfer, or sale of unmarked gunpowder was also prohibited. *Id.* Similarly, Massachusetts mandated the inspection of all gunpowder produced within the Commonwealth or stored in public magazines. 2 General Laws of Massachusetts from the Adoption of the Constitution to February 1822, at 199 (1823). Each cask was required to bear an inspection mark, indicating either

"Massachusetts Inspected Proof" or "Condemned," along with the inspector's name and the year of inspection. Violators faced fines ranging from $200 to $500 for selling condemned powder or tampering with the inspector's marks. *Id*.

Colonial and early state governments also instituted licensing requirements for the manufacturing and transportation of gunpowder. Massachusetts stipulated that no person could transport gunpowder out of the jurisdiction without obtaining a license from two magistrates. *See* Colonial Laws of Massachusetts Reprinted from the Edition of 1672, at 126 (1890). Similarly, Connecticut prohibited the export of locally manufactured gunpowder without a license. These regulations underscore the historical efforts to control the production and movement of gunpowder. 15 The Public Records of the Colony of Connecticut 191 (1890).

The Government identifies at least two states that implemented regulations aimed at ensuring that gun barrels had and maintained proof marks and prohibited their obliteration. In 1805, Massachusetts enacted a law that appointed "provers of fire arms" who were tasked with examining and verifying the quality of musket barrels and pistol barrels presented to them by firearm owners, in exchange for a prescribed fee. Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, at 259 (1807). The primary objective of this law was to safeguard the lives of the citizens by preventing the circulation of potentially hazardous firearms. *Id*.

Under the provisions of the Massachusetts law, the prover's responsibility extended to marking the barrel, specifically within one and a half inches from the breech including the prover's initials and the year of inspection. The requirement was for these markings to be indelibly etched, making them resistant to erasure or alteration. Laws of the Commonwealth of Massachusetts at 260. Severe penalties were imposed on those who manufactured muskets or pistols within

the Commonwealth without having their barrels properly proved and stamped. *Id*. at 260. Furthermore, the law imposed fines on individuals involved in the sale, delivery, or purchase of unmarked firearms manufactured in the Commonwealth. *Id*. at 260–61. The Act also established penalties, ranging from $20 to $50, for anyone found guilty of falsely forging or altering the prover's stamp on any musket or pistol barrel. *Id*.

Maine enacted a similar law that mandated the appointment of "suitable persons" as provers of firearm barrels. Laws of the State of Maine 546 (1830). These provers were required to verify the strength of barrels, then marking and numbering each barrel in a permanent manner. *Id*. A certificate attesting to the proof had to be provided. *Id*. The law also established penalties for selling or offering for sale new or unused musket, rifle, or pistol barrels without proper proof, marking, and certification. *Id*. Additionally, severe fines were imposed on those who falsely altered the stamps, marks, or certificates of any prover of firearms. *Id*.

Laws mandating the marking of gun barrels and gunpowder were primarily crafted with the intention of safeguarding citizens from potential explosions and providing a means to trace hazardous barrels or powder back to the original inspector who affixed the markings. Comparably, § 922(k) serves similar objectives by granting authorities the capacity to recover stolen firearms and trace those that have been implicated in criminal activities. *See United States v. Marzzarella*, 614 F.3d 85, 98 (3rd Cir. 2010); *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992). While § 922(k) does not precisely mirror these historical regulations, the *Bruen* Court was clear that the Government need only identify a "historical analogue, not a historical twin." 142 S. Ct. at 2133. The fundamental inquiry revolves around "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified[.]" *Id*. at 2133.

As the Government persuasively argues, § 922(k) places a minimal "burden on the right of armed self-defense," as firearms bearing serial numbers remain just as effective for self-defense as those without such markings. [ECF No. 43 at 20]. This burden is no more onerous than the historical regulations governing the sale and marking of firearms and gunpowder. Importantly, neither the historical regulations, nor § 922(k), deprived individuals of their ability to employ firearms for self-defense. *United States v. Holton*, 639 F. Supp. 3d 704, 710–11 (N.D. Tex. 2022). Furthermore, *Bruen* expressly acknowledged that "unprecedented societal concerns or dramatic technological changes may require a more nuanced approach" and that the Second Amendment's text, while fixed in meaning, must be adaptable to unforeseen circumstances beyond those faced at the founding. *Bruen*, 142 S. Ct. at 2132. Section 922(k) specifically addresses contemporary societal challenges related to gun violence and the complexities associated with investigating and prosecuting such crimes.

Importantly, § 922(k) is rooted in part on "technological changes" that unfolded after the founding, which was recognized by *Bruen*. *Id*. Mass production of firearms has led to increased availability and the risk of misuse. Serial numbers, although rare on American-made firearms during the founding era, gained prominence during the mid-19th Century. Samuel Colt was an early adopter, incorporating serial numbers on his firearms as early as 1837, while other manufacturers followed suit in the 1850s and 1860s.[3] States began prohibiting the removal of

---

[3] *See* R.L. Wilson, Colt: An American Legend 16, 362 (1985); NRA Museums, Smith & Wesson No. 1 1st Issue revolver w/ Original Gutta Percha Case, https://perma.cc/46F7-BTZL (last visited Sept. 20, 2023) (Smith & Wesson); The Winchester Arms Collectors Association, 1860 Henry Rifles, https://perma.cc/W9CJ-L66H (last visited Sept. 20, 2023) (Winchester); Nat'l Park Serv., Firearm Serial Numbers, https://perma.cc/3S3D-CDT6 (last visited Sept. 20, 2023) (Federal Armory).

serial numbers in the 1920s.[4] Congress eventually mandated firearm manufacturers and importers to mark all firearms with serial numbers in the Gun Control Act of 1968. *See* Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1223. These changes in firearm technology and regulation underscore the evolving landscape surrounding the Second Amendment's application to contemporary circumstances.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Indictment is DENIED. [ECF No. 68]. The Motion to Dismiss filed on April 25, 2023 is MOOT. [ECF No. 40].

IT IS SO ORDERED.

Dated this 20th day of September, 2023.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] *See, e.g.*, 2 Consolidated Supplement to the Codes and General Laws of the State of California 2627 (1926), Act 1183, § 13 (enacted 1923); 3 Oregon Code 1930 at 5498 (1930), § 72-213 (enacted 1925); 3 Compiled Laws of the State of Michigan 5859 (1929), Ch. 280 § 16760 (enacted 1927).