IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 4:22-CR-176 |
| | ) | |
| v. | ) | GOVERNMENT'S |
| | ) | SENTENCING |
| DONTAVIUS RASHAWN SHARKEY, | ) | MEMORANDUM |
| | ) | |
| Defendant. | ) | |

## Table of Contents

INTRODUCTION ............................................................................................ 2

ADVISORY GUIDELINES RANGE ............................................................... 2

    *1.  Factual objections* ........................................................... 2

    *2.  Defendant possessed firearms in connection with other felonies* ...................... 6

    *3.  Defendant should receive an aggravating role enhancement* ...................……… 8

    *4.  The reckless endangerment during flight enhancement applies* ………….…….10

    *5.  Defendant didn't accept responsibility* ...........................................…………11

    *6.  The Court should not apply Amendment 821* ................................................ 14

    *7.  The Court should depart upward* ................................................................ 14

THE § 3553(a) FACTORS SUPPORT A SENTENCE OF AT LEAST 360 MONTHS' PRISON ............................................................................................................ 17

CONCLUSION ............................................................................................... 20

## INTRODUCTION

Defendant, a federal felon previously convicted of killing someone, shot up a crowd of teens attending a baby shower.  His motive, that a rival gang member happened to be in that crowd, was unconscionable.  Defendant, knowing that he started a war, then proceeded to arm himself to the teeth with handguns, rifles, and a machinegun.  Defendant is the poster child of a violent recidivist.  The community is unsafe with him in it.  The Court should impose a significant sentence.

## ADVISORY GUIDELINES RANGE

The government agrees with the guideline range in the Final PSR, which is calculated as follows:

| | |
|---|---|
| Base offense level (§2K2.1(b)(4)(B)) | 20 |
| 8 to 24 firearms (§2K2.1(b)(1)(B)) | +4 |
| Obliterated serial number (§2K2.1(b)(4)(B)) | +4 |
| In connection (§2K2.1(b)(6)(B)) | +4 |
| Role adjustment (§3B1.1(c)) | +2 |
| Reckless endangerment (§3C1.2) | +2 |
| Total offense level | 36 |

Criminal History:                                                    IV

Guidelines range:              262 to 327 months' imprisonment

*1. Factual objections*

Defendant filed numerous factual objections to the PSR.  *See generally* Dkt. No. 149.  The government attempts to address each below.  First, objections 1 and 2 concern the facts underlying two of Defendant's disciplinary actions at the jail.  In support of the factual accuracy of this information, as well as to provide additional

information underlying some of the other disciplinary actions, the government offers

the following exhibits:

- Government Exhibit 1—Polk County Jail reports regarding the incident in paragraph 7(b);

- Government Exhibit 2—Polk County Jail reports regarding the incident in paragraph 7(c);

- Government Exhibit 3—Polk County Jail reports regarding the incident in paragraph 7(d);

- Government Exhibit 4—Polk County Jail reports regarding the incident in paragraph 7(e);

- Government Exhibit 5—Polk County Jail reports regarding the incident in paragraph 7(f);

- Government Exhibit 6—Polk County Jail reports regarding an incident on July 14, 2023, not included in the PSR;

- Government Exhibit 7—Polk County jail reports regarding Defendant's refusal of mental health services on September 13, 2023; and

- Government Exhibits 8A, 8B, 8C—Reports and videos underlying incident in paragraphs 7(i) and 55.

Objections 3a, 3b, 4, 5, 6, 7, 8, 9, and 10 deal primarily with Defendant's

assertion that he was not the shooter at the June 18, 2022, baby shooter.  The

government disagrees with this assertion and, in response, relies on the trial record

in this case.  Because this Court was the trial court, it is in the best position to weigh

the evidence to determine whether the government meets its preponderance burden

regarding Defendant's culpability as the shooter.  Thus, the government will not

belabor the point in this filing, other than to assert the evidence presented at trial

more than meets its burden and, thus, the Court should overrule these objections.

In objections 3b and 9, Defendant suggests that his repeated attempts to arm himself, as well as his extremely paranoid behavior while at his residence, were just his normal operating procedure as a gang member and had nothing to do with his fear of retaliation from the June 18 shooting. The government disagrees. As explained both at the trial, and as reflected in the discovery materials, there was a marked difference in Defendant's behavior and demeanor pre- and post-shooting. Defendant didn't start mass acquiring firearms from the straw purchaser until after the shooting. He didn't go look at firearms and firearm parts at the gun store until after the shooting. And the extreme levels of paranoia he displayed at his own home didn't start until after the shooting. For example, following the shooting, Defendant rarely exited his own home without carefully looking both ways down the street to ensure the coast was clear. This behavior was not displayed prior to the shooting. We also don't see him, prior to the shooting, looking out his own backdoor while armed with multiple firearms—but we do after the shooting. Defendant's post-shooting behavior has one logical explanation: he did it. All of the other evidence also points to the same conclusion. The Court should also overrule the Defendant's objections on this point.

In his objections, Defendant also repeatedly takes aim at the credibility of his straw purchaser's (Ms. Morgan's) testimony. *See* objection numbers 3c, 10, 11, and 12. Again, the Court witnessed, first-hand, this testimony (as well as all the corroborating information) and can judge for itself whether the witness was telling the truth. The government disagrees with Defendant that the witness "perjured

herself" or was otherwise untruthful.   The Court should overrule Defendant's objections on this subject.

In objection number 13, Defendant takes issue with paragraph 23 of the PSR, asserting that "[n]o evidence was presented that [he] obliterated the serial number or attached the switch."   Contrary to Defendant's assertion, there was evidence presented that Defendant did just that.  Ms. Morgan testified that Defendant told her that he would obliterate the serial numbers on the guns to protect her, i.e., prevent the guns from being traced to her if and when they were recovered by police.  Then, law enforcement does in fact recover two guns she purchased for Defendant with obliterated serial numbers.   Further, Defendant's cellular telephone contained a plethora of evidence showing Defendant was extremely interested in switches.   It's not an impermissible leap to assume he was the one that attached that switch to his gun.   The Court should overrule Defendant's objections on this subject as well.

Next, in objection number 14, Defendant turns to paragraph 27 of the PSR, regarding statements Defendant made to law enforcement regarding dropping his pipe and asking about federal sentences for having an obliterated and a switch.  At trial, the case agent, who is both a Des Moines Police Detective and ATF TFO, testified about these statements, which Defendant made to the case agent and another ATF Special Agent.  In his objection letter, Defendant denies making these statements.  So, essentially, Defendant is requesting this Court make a credibility determination and find that the case agent, who testified under oath and was subject to cross examination, made it all up.   And the Court should, instead, believe

Defendant's self-serving, unsworn assertions in his objection letter that he never said any of it.  The government believes the trial record speaks for itself regarding the truthfulness of the case agent.  And the Court should overrule Defendant's objection.

Finally, while not a "factual" objection, Defendant also noted, in objection number 15, his position that some of the counts of conviction are unconstitutional, referring the Court to his prior filings on this issue.  For the reasons stated in the Court's ruling, the Court should overrule this objection.

### 2.  *Defendant possessed firearms in connection with other felonies*

Defendant objects to the four-level enhancement, pursuant to USSG §2K2.1(b)(6)(B), for possessing a firearm in connection with another felony offense.  At a minimum, Defendant possessed a firearm in connection with the state of Iowa felony crimes of attempted murder, willful injury, assault with intent to inflict serious injury, assault while using/displaying a weapon, and intimidation with a dangerous weapon.  Thus, the enhancement applies.

USSG §2K2.1(b)(6)(B) directs that a four-level enhancement should be applied if the defendant "used or possessed any firearm or ammunition in connection with another felony offense[1] . . . ."  USSG §2K2.1(b)(6)(B).  Further, Application Note 14 to USSG §2K2.1 states that the enhancement applies "if the firearm or ammunition

---

[1] "Another felony offense" is defined in Application Note 14(C), which states that it is "any federal, state, or local offense . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." USSG §2K2.1, comment. (n.14(C)).  When there is no conviction, the government must prove the other offense by a preponderance standard. *United States v. Nilsen*, 18 F.4th 587 (8th Cir. 2021).

facilitated, or had the potential of facilitating, another felony offense . . . ." USSG §2K2.1, comment. (n. 14(A)).

"The enhancement must be imposed unless it is clearly improbable that [the defendant] possessed the firearm in connection with another felony offense." *United States v. Agee*, 333 F.3d 864, 866 (8th Cir. 2003) (internal citations omitted). The Eighth Circuit has found that a firearm has the potential to facilitate another felony offense, for purposes of the four-level enhancement, when a defendant keeps a firearm "at an easily accessible location" while committing another felony, as this "permits the inference that the firearm emboldened the defendant" to engage in the illegal act. *United States v. Mack*, 343 F.3d 929, 936 (8th Cir. 2003); *see also United States v. Kanatzar*, 370 F.3d 810, 816 (8th Cir. 2004), *vacated on other grounds*, 543 U.S. 1107, 125 S. Ct. 1010, 160 L.Ed.2d 1029 (2005).

Defendant possessed two firearms and multiple rounds of ammunition in connection with the state of Iowa felonies of attempted murder, willful injury, assault with intent to inflict serious injury, assault while using/displaying a weapon, and intimidation with a dangerous weapon.[2]  *See* Iowa Code §§ 707.11, 708.4, 708.2(1), 708.2(3), 708.6. No inference is required, as Defendant repeatedly shot two firearms

---

[2] In his objections, Defendant argues that the jury's acquittal on Count 1 is evidence that he did not commit the shooting. However, the jury's verdict did not detail its thought process on its finding of not guilty. We don't know if the jury's finding was based on a belief that Defendant wasn't the shooter, or some other hang-up, i.e., the interstate commerce element. Assuming for the sake of argument that the jury didn't think Defendant was the shooter, Defendant correctly acknowledges in his objections that binding Eighth Circuit precedent dictates that this is immaterial for sentencing purposes, provided the Court determines the issue by a preponderance of the evidence. *See, e.g.*, *United States v. Bennett*, --- F. 4th ---, 2024 WL 296395  (8th Cir. Jan. 26, 2024); *United States v. Johnson*, 75 F.4th 833, 847 (8th Cir. 2023).

into a crowd of people.  Evidence presented at trial showed that on June 18, 2022, Defendant was at a baby shower when he spotted rival gang member J.S.  Defendant then left the baby shower, acquired two firearms, covered himself from head to toe to disguise his identity, and returned surreptitiously.  When he returned, he ambushed a crowd of people attending the baby shower, firing 24 rounds from two firearms into that crowd, which included J.S.  Defendant struck and seriously injured three of those individuals—all of whom were minors.  Two were hospitalized for lengthy stays.  All three suffer lasting effects of the shooting, including undergoing multiple surgeries and injuries that will linger for a lifetime.   Defendant's shooting of those victims on June 18, 2022, constitutes the commission of all of the above state of Iowa crimes.  He used two guns and numerous rounds of ammunition to commit these crimes.  The Court should apply the enhancement.

*3.  Defendant should receive an aggravating role enhancement*

Defendant next objects to the two-level aggravating role enhancement that was applied, pursuant to USSG §3B1.1(c).  (Dkt. No. 149, p. 2.)   Because Defendant directed at least one other person, the aggravating role enhancement applies, and the Court should overrule Defendant's objection.

Pursuant to USSG §3B1.1(c), a two-level increase applies "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b). . . ."  The Eighth Circuit broadly interprets each of these terms. *See United States v. McSmith*, 968 F.3d 731, 736 (8th Cir. 2020).

8

For the enhancement to apply, a defendant must "direct or enlist the aid of others." *United States v. House*, 923 F.3d 512, 518 (8th Cir. 2019) (quoting *United States v. Bahena*, 223 F.3d 797, 805 (8th Cir. 2000)); *accord* USSG §3B1.1, comment. (n.2). Managing or supervising even one other person in a single transaction is sufficient. *See House*, 923 F.3d at 518 (analyzing in drug context).

Here, Defendant directed at least two people to aid him in his illegal acquisition of firearms. First, the evidence at trial showed that Defendant recruited Marissa Morgan to purchase him multiple firearms. This, in and of itself, is sufficient for the enhancement. *United States v. Ortiz-Rodriguez*, 461 Fed. App'x 525, 527 (8th Cir. 2012) (per curiam) ("To be subject to a role enhancement, a defendant need only recruit a participant into a conspiracy or manage or supervise a participant."). However, Defendant did even more in this case. He not only recruited Morgan into the criminal activity, but he also controlled every aspect of the criminal activity—he told Morgan when the gun purchases would occur, where they would occur, and what Morgan should purchase. The transactions would not have happened without Defendant running the show—he was the very definition of an organizer, leader, manager, and supervisor of Morgan's criminal activity.

Second, the evidence at trial also demonstrated that Defendant recruited a second person to assist him. After the Scheels purchase, Defendant's car broke down and he couldn't immediately pick up the firearm from Morgan. Defendant, being so desperate to immediately acquire his gun, sent another person to pick up the gun from Morgan. Thus, Defendant enlisted at least two people to assist him with the

completion of his criminal activity.  A two-level enhancement squarely applies, and the Court should overrule Defendant's objection.

### 4. *The reckless endangerment during flight enhancement applies*

Defendant also objects to the two-level enhancement for reckless endangerment during flight, pursuant to USSG §3C1.2.  This enhancement applies. USSG §3C1.2 requires a two-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer . . . ."

Here, Defendant ran from officers while having a loaded and chambered machinegun on his person.  Defendant was within visual sight of several pursuing officers (including a canine officer) and, thus, in very close proximity to the agents. At some point during the flight, which occurred in a backyard in an urban residential area, Defendant removed the loaded machinegun from his person and threw it on the ground.  This occurred mere inches from the canine officer, and feet from the human officers.  There were also multiple other agents close by, as officers were at Defendant's residence executing a search warrant.

Defendant's flight from officers recklessly created a substantial risk of death or serious bodily injury in two ways.  First, running from officers while carrying a loaded and chambered machinegun is exceptionally dangerous.  This is especially true here where the type of firearm possessed by Defendant has no safety mechanism and had a switch attached.  If Defendant would have accidentally depressed the trigger during his flight or efforts to remove and discard it, it would have fired all of

the rounds in the gun with that single pull of the trigger.  As officers were pursuing at a very close distance when Defendant removed the gun and discarded it, he created a substantial risk of injury to the pursuing officers, to himself, and to other pedestrians.  *See, e.g.*, *United States v. Davidson*, 933 F.3d 912 (8th Cir. 2019) (finding enhancement applied to a foot chase where the defendant fled on foot in a residential area discarding a firearm during the process); *United States v. Bates*, 561 F.3d 754, 757 (8th Cir. 2009) (finding enhancement applied to foot chase in residential neighborhood when the defendant had a loaded gun in his waistband during flight) (internal citations omitted); *United States v. Easter*, 553 F.3d 519, 524 (7th Cir. 2009) ("[S]imply reaching for a loaded gun is enough to create a substantial risk of serious bodily injury to another person."); *United States v. Lee*, 199 F.3d 16, 17 (1st Cir. 1999) ("[Defendant's] efforts to seize his gun did create a substantial risk of bodily injury, whether for accidental discharge or the threat of fire from the police.").

Defendant's conduct was reckless, and created a substantial risk of injury or death to others.  The Court should overrule Defendant's objection and apply the enhancement.

### 5. *Defendant didn't accept responsibility*

It is Defendant's burden to prove he is entitled to a reduction for acceptance of responsibility.  *United States v. Davis*, 875 F.3d 869, 875 (8th Cir. 2017) (citing USSG §3E1.1(a)).  "The adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial,

11

however, does not automatically preclude a defendant from consideration for such a reduction." USSG §3E1.1, comment. (n.2).  But such situations are rare and could include a defendant going to trial to assert and preserve issues that do not relate to factual guilt, such as constitutional challenges to a statute or challenges to the applicability of a statute to the defendant's conduct. *Id; see also United States v. Bennett*, --- F.4th ----, 2024 WL 296395 (8th Cir. Jan. 26, 2024); *United States v. Monds*, 945 F.3d 1049, 1054 (8th Cir. 2019).  In such a situation, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Monds*, 945 F.3d at 1054.

Defendant went to trial.  He did not go to trial to preserve a constitutional challenge or challenge to the applicability of a statute unrelated to his factual guilt. Instead, Defendant went to trial because he denied that he committed the eight counts he was charged with and wanted to exercise his right to make the government prove it to a jury.  At trial, Defendant denied the factual elements of each and every count, other than that he was a felon.  "[A] defendant who proceeds to trial and presents a defense that denies factual guilt does not clearly demonstrate acceptance of responsibility." *Id.*; *United States v. Arias,* 60 F.4th 1138, 1143 (8th Cir. 2023) (affirming denial of two-level reduction for acceptance of responsibility where the defendant denied factual guilt at trial).  That's exactly what occurred here.

In his objections, Defendant now claims that he went to trial solely because he wasn't the baby shower shooter.  But what Defendant's argument ignores is that the shooting encompassed conduct comprising the basis for only one of the eight counts.

He didn't plead guilty to any of the other seven counts, or even stipulate to "administrative" elements such as interstate nexus, that the serial number on the gun was obliterated, or that the machinegun was a machinegun.  Further, what Defendant's argument also ignores is that the Indictment didn't charge the count involving the baby shower shooting (or any of the straw purchasing) until seven months after the initial filing.  *Compare* Dkt. No. 2 *with* Dkt. No. 54.  In that time, Defendant didn't come in and plead guilty to the charges, which involved only the execution of a search warrant at his residence.  Defendant's tardy claims of contrition, thus, ring hollow.  He hasn't accepted responsibility for any of his conduct throughout the pendency of these proceedings.  Defendant doesn't now get to claim otherwise to try to reap the benefits of a reduction he isn't entitled to.  The Court should overrule his objection.[3]

---

[3] Even setting aside the proceeding to trial argument, Defendant's repeated misbehavior while at Polk County Jail, some of which resulted in new charges, is a separate reason to withhold acceptance. *See, e.g.*, *United States v. Nguyen*, 52 F.3d 192, 194 (8th Cir. 1995); *United States v. Cooper*, 998 F.3d 806 (8th Cir. 2021) (upholding denial of acceptance where defendant committed a custodial assault 13 days prior to his guilty plea); *United States v. Haynes*, 2021 WL 5575298 (8th Cir. Nov. 30, 2021) (upholding denial of acceptance where defendant twice assaulted other inmates prior to pleading guilty); *United States v. Garner*, 2021 WL 578363 (8th Cir. Dec. 7, 2021) (per curiam) (defendant not entitled to acceptance of responsibility where he committed a custodial assault between plea and sentencing, as well as a "continuous stream" of violations); *United States v. Chappell*, 69 F.4th 492 (8th Cir. 2023) (affirming denial of acceptance of responsibility where, prior to pleading guilty, defendant sexually assaulted multiple correctional officers and, after his guilty plea, possessed a metal shank); *United States v. Arellano*, 291 F.3d 1032 (8th Cir. 2002) (denying acceptance of responsibility where post-plea, defendant assaulted a jail guard); *United States v. Atlas*, 94 F.3d 447, 451 (8th Cir. 1996) (a defendant's behavior in jail while awaiting sentencing is a relevant factor as to whether he has accepted responsibility).

6. *The Court should not apply Amendment 821*

As noted in the government's objection letter, and memorialized in the Final PSR, due to ex post facto issues, the 2021 Guidelines Manual should apply. USSG §1B1.11(b)(1). Given that "[t]he Guideline Manual in effect on a particular date shall be applied in its entirety," the Defendant should receive the +2 status points that would be inapplicable under the 2023 Manual. USSG §1B1.11(b)(2). While Defendant would then be eligible for the retroactive application of Amendment 821, the government requests that the Court not apply it, after taking into consideration the factors in USSG §1B1.10. Specifically, as noted in Application Note 1(B), in determining whether a reduction is warranted, the Court shall consider the 18 U.S.C. § 3553(a) factors, combined with the "public safety consideration" factors listed therein. The government believes all of these factors, which are extensively explained herein and supported by the trial record in this case, weigh against the Court granting Defendant retroactive relief. Should the Court agree with the government, Defendant's criminal history category would be IV, which is the category reflected in the Final PSR.

7. *The Court should depart upward*

This is a unique case. It involves Defendant's discharge of multiple firearms in a display of violence that was calculated, callous, and intended to kill. Multiple minors were seriously injured by Defendant's gunfire. In situations where a gun is discharged, the guidelines suggest application of a "substantial sentence increase."

14

USSG §5K2.6.[4] This is just such a case. For the reasons noted below, the Court

should apply an upward departure equal to the cross-reference for attempted murder.

Due to what is essentially a loophole in the guidelines, a cross-reference from

§2K2.1 to the guideline that more appropriately addresses the conduct can only be

applied if the firearm/ammunition used was included in the count of conviction. *See*

USSG §2K2.1(c)(1). So, here, because none of the counts of conviction include the

firearms and ammunition Defendant used when he discharged two firearms and

attempted to murder multiple people on June 18, 2022, Defendant is rewarded with

a lower guideline range. However, the guidelines fill this hole through a departure.

USSG §5K2.6. Here's what the guidelines presently are (should the government win

the above issues):

| | |
|---|---|
| Base offense level (§2K2.1(b)(4)(B)) | 20 |
| 8 to 24 firearms (§2K2.1(b)(1)(B)) | +4 |
| Obliterated serial number (§2K2.1(b)(4)(B)) | +4 |
| In connection (§2K2.1(b)(6)(B)) | +4 |
| Role adjustment (§3B1.1(c)) | +2 |
| <u>Reckless endangerment (§3C1.2)</u> | <u>+2</u> |
| Total offense level | 36 |
| | |
| Criminal History: | IV |
| | |
| Guidelines range: | 262 to 327 months' imprisonment |

And here's what the guidelines would be if the attempted murder cross reference were

applied:

---

[4] Defendant's discharge of two firearms into a crowd of people is also a reason for an upward variance. *See United States v. Kelly,* 436 F.3d 992, 995 (8th Cir. 2006) (affirming district court's upward variance based on defendant's acts of shooting at a car that contained his girlfriend and children because Section 3553(a)(5) authorizes consideration of "any pertinent policy statement").

| | |
|---|---|
| Base offense level (§2A2.1(a)(1)) | 33 |
| Permanent/Life-threatening injury (§2A2.1(b)(1)) | +4[5] |
| Role adjustment (§3B1.1(c)) | +2 |
| Reckless endangerment (§3C1.2) | +2 |
| Total offense level | 41 |

Criminal History:                                           IV

Guidelines range:              360 months' to life imprisonment

Based on Defendant's discharge of two separate firearms into a crowd of people at a baby shower (striking three of those people), with the motive being nothing other than that crowd of people included a rival gang member, the Court should apply a "substantial sentence increase" (departure) that better reflects the nature of the conduct. Specifically, the Court should apply an upward departure of five levels to a total offense level 41, which reflects the use of the attempted murder cross reference, as outlined below. Similar departures have been upheld by the Eighth Circuit under much less aggravating circumstances. *See, e.g.*, *United States v. Todd-Harris*, 19 F.4th 1074 (8th Cir. 2021) (upholding upward departure where the defendant discharged a firearm towards a passing SUV and hit the vehicle and nearby residences, but no people); *United States v. Pete*, 723 Fed.Appx. 381 (8th Cir. 2018) (upholding five-level upward departure where the defendant discharged two firearms towards an occupied apartment, hitting the apartment, but not hitting any people) (per curiam); *United States v. Peeples*, 879 F.3d 282, 288-89 (8th Cir. 2018) (affirming

---

[5] See paragraph 13 of the PSR, which describes the victims' injuries. Defendant did not object to the information related to the victims' injuries and, instead, simply objected to any inference that he was the shooter. *See* Dkt. No. 149 at ¶ 6.

four-level upward departure when defendant fired gun into neighbors' apartment and targeted the bedroom, but did not strike any people); *United States v. Donelson*, 450 F.3d 768, 774 (8th Cir. 2006) (affirming two-level upward departure when defendant fired gun at group of persons sitting outside of residence, hitting one); *United States v. Porter*, 409 F.3d 910, 914 (8th Cir. 2005) (affirming seven-level upward departure when defendant fired high-powered weapon into the victim's home, but did not strike any people).

Here, Defendant's discharged two firearms into a crowd of people. He struck and severely injured three, all of whom were minors. The Court should depart upward.

## THE § 3553(a) FACTORS SUPPORT A SENTENCE OF AT LEAST 360 MONTHS' PRISON

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).  For the reasons that follow, the § 3553(a) factors support a sentence of at least 360 months' imprisonment.

The number of aggravating factors in this case is overwhelming.  The guidelines are inadequate to address the type of multi-layered criminal behavior Defendant was engaging in.  For example, Defendant is assessed only one enhancement to account for both a high capacity magazine and a machinegun when, normally, only one of those items would warrant the higher base offense level.  His continued assault of other inmates at the jail, including one that appeared to be motivated by that individual's believed cooperation with the government, isn't taken into account by the guidelines.  The straw purchasing conduct is not adequately addressed by the guidelines, other than via a role enhancement.  Defendant's possession of a distribution quantity of M30 fentanyl pills at his residence, next to his gun, also isn't taken into account, whatsoever, by the guidelines.  The fact he attempted to murder *multiple* victims and caused severe injuries to multiple victims also isn't accounted for—he gets one enhancement (or cross reference) no matter whether he tried to murder one or ten victims.  And, other than the government's requested upward departure, the level of harm he caused his three victims also isn't taken into account.  So, the bulk of the incredibly aggravating factors in this case are simply unaccounted for by the guidelines.

Suffice it to say, Defendant is an incredibly violent person.  When he's not in prison, he's acquiring guns and shooting people with them.  Previously, Defendant pointed a firearm at a minor's head, pulled the trigger, and shot and killed him.  After

receiving a lenient sentence for that conduct, he was out on probation, hanging out with fellow gang members, and shooting music videos with guns when he got arrested again. This time, he picked up a federal conviction for felon in possession. He had been out of federal prison for only a matter of months (and was on supervised release) when he kicked off the conduct involved in this case—shooting up a baby shower (with two guns) where a rival gang member happened to be present. Defendant, who knew he had to arm himself for the war he started, then went on a crime spree that was extensively discussed during trial, and culminated in his possession of a machinegun while fleeing from federal agents.

It goes without saying that Defendant is a recidivism risk. His behavior, over and over, has shown no form of supervision will deter him from committing violent crimes. He has also shown that prison sentences don't deter him—he commits incredibly serious crimes as soon as he gets out and while he's still incarcerated. Defendant's risk to the community is at the highest level. To protect the community, a significant prison sentence is warranted. The government recommends a sentence of at least 360 months, to be served consecutively with the term of imprisonment imposed in connection with his supervised release revocation.

## CONCLUSION

The Court should impose a sentence of at least 360 months' imprisonment.

Respectfully Submitted,

Richard D. Westphal
United States Attorney

By:  */s/ Kristin M. Herrera*
Kristin M. Herrera
Adam J. Kerndt
Assistant United States Attorneys
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: kristin.herrera@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on January 31, 2024, I electronically
filed the foregoing with the Clerk of Court using the
CM ECF system.  I hereby certify that a copy of this
document was served on the parties or attorneys of
record and the United States Probation Officer by:

____ U.S. Mail ____ Fax ____ Hand Delivery

 X  ECF/Electronic filing __ Other means (email)

UNITED STATES ATTORNEY
By:   */s/Kristin M. Herrera, AUSA*